PAMELA Y. PRICE, ESQ. (STATE BAR NO. 107713)
PRICE AND ASSOCIATES
A Professional Corporation
901 Clay Street
Oakland, CA  94607
Telephone:  (510) 452-0292
Facsimile:   (510) 452-5625
E:mail: pamela.price@pypesq.com

SIMONA A. FARRISE, LL.M (STATE BAR NO. 171708)
CARLA V. MINNARD. (STATE BAR NO. 176015)
THE FARRISE FIRM, P.C.
901 Clay Street
Oakland, CA 94607
Telephone: (800) 748-6186
Facsimile: (510) 588-4536
E-mail: sfarrise@farriselaw.com
E-mail: cminnard@farriselaw.com

Attorneys for Plaintiffs
MARGARET SO AND LANCE LAVERDURE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARGARET SO AND LANCE LAVERDURE, | NO. C12-5671 (DMR) |
| Plaintiffs, | **FIRST AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS** |
| v. | **(JURY TRIAL DEMANDED)** |
| BAY AREA RAPID TRANSIT, CITY OF OAKLAND, JEFF ISRAEL IN HIS INDIVIDUAL CAPACITY, ERIC BRESHEARS IN HIS INDIVIDUAL CAPACITY, JOHN HARGRAVES IN HIS INDIVIDUAL CAPACITY, ANISA McNACK IN HER INDIVIDUAL CAPACITY, Y. JOSEPH IN HIS INDIVIDUAL CAPACITY, ANDY ALKIRE IN HIS INDIVIDUAL CAPACITY, MARK MACAULAY IN HIS INDIVIDUAL CAPACITY, and DOES 1-100, inclusive, | |
| Defendants. | |

Plaintiffs and their attorneys, respectfully allege as follows:

## JURISDICTION AND VENUE

1.     Their action arises under 42 U.S.C. § 1983.  Plaintiffs invoke jurisdiction over their federal claims pursuant to the provisions of 28 U.S.C. § 1331 and 28 U.S.C. § 1343. The acts and practices complained of herein occurred in Oakland, California, within this judicial district.

2.     Jurisdiction over Plaintiffs' claims under state law is invoked pursuant to the provisions of 28 U.S.C. § 1367.  The pendent state claims contained within this Complaint arise from the same nucleus of operative facts, and involve substantially identical issues of fact and law, such that the entire action constitutes a single case which ordinarily would be prosecuted in one proceeding.

## PARTIES

3.     Plaintiffs MARGARET SO and LANCE LAVERDURE  (hereinafter "SO" and "LAVERDURE") are citizens of the United States and residents residing in the City of Oakland, Alameda County, California.

4.     Defendant BAY AREA RAPID TRANSIT  (hereinafter "BART") is and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.  As an employer, Defendant BART is responsible for the acts and omissions of its agents and employees, including the individually named Defendants and DOES 1 through 25.

5.     Defendant CITY OF OAKLAND (hereinafter "CITY") is and at all times herein mentioned was, a municipal corporation duly organized and existing under the laws of the State of California.  As an employer, Defendant CITY is responsible for the acts and omissions of its agents and employees, including the individually named Defendants and DOES 26 through 50.

6.     Defendant JEFF ISRAEL (hereinafter "ISRAEL") is and at all times herein mentioned was, a police supervisor employed by Defendant CITY OF OAKLAND, assigned to the Oakland Police Department ("OPD").  In doing the acts alleged herein, ISRAEL was acting within

1   the course and scope of his employment as a police supervisor for OPD and under color of state
2   law.  ISRAEL is sued in his individual capacity.

3          7.       Defendant ERIC BRESHEARS (hereinafter "BRESHEARS") is and at all
4   times herein mentioned was, a police supervisor employed by Defendant CITY OF OAKLAND,
5   assigned to the OPD.  In doing the acts alleged herein, BRESHEARS was acting within the course
6   and scope of his employment as a police supervisor for OPD and under color of state law.
7   BRESHEARS is sued in his individual capacity.

8          8.       Defendant JOHN HARGRAVES (hereinafter "HARGRAVES") is and at all
9   times herein mentioned was, a police supervisor employed by Defendant CITY OF OAKLAND,
10  assigned to the OPD.  In doing the acts alleged herein, HARGRAVES was acting within the course
11  and scope of his employment as a police supervisor for OPD and under color of state law.
12  HARGRAVES is sued in his individual capacity.

13         9.       Defendant ANISA McNACK  (hereinafter "McNACK") is and at all times
14  herein mentioned was a police officer employed by Defendant BART.  In doing the acts alleged
15  herein, McNACK was acting within the course and scope of her employment as a police officer for
16  Defendant BART and under color of state law.  Her actions were done under the supervision,
17  direction and control of Defendants BART and OPD.  McNACK is sued in her individual capacity.

18         10.      Defendant Y. JOSEPH  (hereinafter "JOSEPH") is and at all times herein
19  mentioned was a police officer employed by Defendant BART.  In doing the acts alleged herein,
20  JOSEPH was acting within the course and scope of his employment as a police officer for
21  Defendant BART and under color of state law.  His actions were done under the supervision,
22  direction and control of Defendants BART and OPD.  JOSEPH is sued in his individual capacity.

23         11.      Defendant ANDY ALKIRE  (hereinafter "ALKIRE") is and at all times
24  herein mentioned was a lieutenant employed by Defendant BART.  In doing the acts alleged
25  herein, ALKIRE was acting within the course and scope of his employment as lieutenant for
26  Defendant BART and under color of state law.  His actions were done under the supervision,
27  direction and control of Defendants BART and OPD.  ALKIRE is sued in his individual capacity.
28

2402.02P202PYP                              -3-

12.     Defendant MARK MACAULAY  (hereinafter "MACAULAY") is and at all times herein mentioned was a sergeant employed by Defendant BART.  In doing the acts alleged herein, MACAULAY was acting within the course and scope of his employment as sergeant for Defendant BART and under color of state law.  His actions were done under the supervision, direction and control of Defendants BART and OPD.  MACAULAY is sued in his individual capacity.

13.     Plaintiffs are ignorant of the true names and capacities, whether individual, corporate, associate or otherwise of the defendants sued herein as DOES 1 through 100, inclusive, and therefore sues these Defendants by such fictitious names pursuant to California Code of Civil Procedure Section 474.  Plaintiffs are informed and believe and thereon allege that each of these fictitiously-named Defendants is responsible in some manner for the occurrences herein alleged, and that these defendants proximately caused Plaintiffs' injuries as herein alleged.  Plaintiffs will amend this Complaint to allege their true names and capacities when ascertained.  Plaintiffs are informed and believe and thereon allege that at all material times herein mentioned, each defendant was the agent of the other defendants and in performing the acts alleged herein, was acting in the course and scope of such agency with the permission and consents of his, her or its co-defendants. Defendants BART and the CITY OF OAKLAND and each of the DOE Defendants ratified and/or authorized the acts of the other defendants.  Each of the DOE defendants herein is responsible in whole or in part for the damages alleged herein.

## STATEMENT OF FACTS

14.     Commencing in the summer of 2011, there were demonstrations throughout this nation, which began with "Occupy Wall Street" in New York City and grew to include Occupy protests in many cities in the United States and in California.  Although members of the Occupy movement have a range of political views and opinions, the movement as a whole advocates for broad political and social change in America, and many within the movement seek specifically to bring attention to this nation's economic inequities ("we are the 99%").

15.     Commencing in early October 2011, the Occupy Oakland movement began

to take form and its activities were centered in the plaza in front of Oakland City Hall.  Persons associated with the Occupy Oakland movement engaged in a variety of expressive and associative activities in and around the plaza, including demonstrations and marches, the exhibition of signs and banners, and conducting meetings about the movement and political and social issues.  Some supporters of the movement erected tents in the plaza; many others came to the plaza at various times to participate in meetings, demonstrations and other expressive activity protected by the First Amendment of the U.S. Constitution and Article I, Section 2 of the California Constitution.

16.    On the evening of November 2, 2011, between 7:00 and 7:30 p.m., SO and LAVERDURE were walking near the plaza, at the corner of 11th Street and Broadway, participating along with hundreds of people in the Occupy Oakland protests.  This protest march was the first time that either SO and LAVERDURE had participated in an Occupy Oakland protest. SO and LAVERDURE were exercising their First Amendment rights of freedom of assembly and to peacefully demonstrate.  Although many protesters had marched toward the Port of Oakland, at that time, about 80 or 120 people started marching toward Jack London Square.  There was almost no traffic at the time.  Some cars were coming through from Washington Street toward the area known as Oakland's Chinatown.

17.    As SO and LAVERDURE were crossing the street along with dozens of other people, a vehicle came driving slowly through the crowd toward them.  The driver of the vehicle, Jan Carrigg, was observed by many driving erratically.  Carrigg stopped his vehicle in front of SO and LAVERDURE.  A few seconds later, Carrigg intentionally accelerated the vehicle into the crowd of pedestrians, hitting and seriously injuring SO and LAVERDURE.

18.    Carrigg initially attempted to drive away from the scene, but the vehicle was blocked by some of the people at the scene.  Carrigg exited his vehicle and angrily launched himself into the crowd attempting to provoke a fight.  Carrigg left the vehicle momentarily and behaved in an extremely aggressive and hostile manner toward the crowd of witnesses.  Carrigg's passenger and girlfriend, Sara Abu-Nasser, remained with the vehicle, briefly occupying the driver's seat.  SO and LAVERDURE believe that Carrigg and Abu-Nasser may have intentionally

changed seats to conceal the fact that Carrigg was driving the vehicle which actually belonged to Abu-Nasser.

19.     Defendant FRANKLIN spoke to Carrigg and possibly Abu-Nasser at the scene of the crime immediately following the commission of the crime.  Despite the fact that a felony was committed in the presence of dozens of witnesses – many of whom filmed the incident – and despite the fact they had the suspects and other critical evidence at the scene within their control, Defendants who appeared to be BART police, cleared a path for Carrigg and Abu-Nasser to leave the scene of the felony crime.  Defendants' actions aided and abetted the assault and battery perpetrated against SO and LAVERDURE, and facilitated the concealment of a crime and the destruction of critical evidence.

20.     Defendants failed to (1) conduct any on scene sobriety tests; (2) failed to administer any blood or breath alcohol tests; (3) failed to photograph the scene; (4) failed to impound the instrumentality of the crime (the vehicle); (5) failed to obtain the name of either the driver or the passenger (both of whom were initially listed in OPD's incident report as "unknown"); (6) failed to interview the victims of the crimes for weeks; and (7) failed to interview any eye witnesses among the dozens who were not only present but offering to give statements and recount what they saw.  All of the above is in direct violation of both BART and OPD's internal policies and manuals regarding crime scene investigation.

21.     Plaintiffs are informed and believe and thereon allege that at the time of this unprovoked attack, Defendant BART and its agents and employees were operating in Oakland and assisting OPD pursuant to a mutual aid plan and the consent of the OPD and Chief Howard Jordan as authorized by California Government Code § 8550 *et seq.*  California Government Code § 8618 provides that the responsible local official in whose jurisdiction an incident requiring mutual aid has occurred shall remain in charge at such incident, including the direction of personnel provided him through mutual aid.  Plaintiffs are informed and believe and thereon allege that Defendants ISRAEL and BRESHEARS were, and remained in charge in the area in and around 11th and Broadway at the time of the attack and directed BART personnel to violate SO and

LAVERDURE's constitutional rights by aiding and assisting the escape of Carrigg and Abu-Nasser.  Plaintiffs are informed and believe and thereon allege that the Defendants employed by BART were acting at the direct instruction and under the control of OPD and the individual Defendants employed with OPD, including but not limited to Defendant HARGRAVES.

22.     But for the fact that SO and LAVERDURE were exercising their First Amendment Right of assembly as part of the Occupy Oakland protests, Defendants would have done their job in a proper manner for the purpose of having Carrigg and Abu-Nasser face prosecution for the felony committed against SO and LAVERDURE.   Defendants retaliated against SO and LAVERDURE for exercising their First Amendment rights of freedom of assembly.

23.     As a direct result of Defendants' actions, SO and LAVERDURE were deprived of their First Amendment right to seek redress from the government in the form of having Carrigg and Abu-Nasser prosecuted for their crimes against them.  By openly cooperating with Carrigg and Abu-Nasser in order to permit them to flee the scene of the crime without preserving any evidence, Defendants conspired with a private citizen to deprive SO and LAVERDURE of their First Amendment right to seek redress from the government.

24.     Defendants violated Article I, Section 28(b)(9) and (13) of the California Constitution by acting in such a manner as to violate SO and LAVERDURE's right to a speedy trial and a prompt and final conclusion of the case and their right to seek and secure restitution from Carrigg and Abu-Nasser for the crime committed against them.

25.     Within six months of the above-described events, on March 19, 2012, both SO and LAVERDURE presented Defendant BART with a government tort claim which detailed the injuries, losses and damages suffered and incurred by SO and LAVERDURE as a result of the above-described occurrences, all in compliance with the requirements of Section 900 *et seq.* of the California Government Code.  Their claims were rejected on May 3, 2012.  (True and correct copies of their Notices of Rejection are attached hereto as Exhibit A.)

26.     Within six months of the above-described events, on April 30, 2012, both

SO and LAVERDURE presented Defendant CITY OF OAKLAND with a government tort claim which detailed the injuries, losses and damages suffered and incurred by SO and LAVERDURE as a result of the above-described occurrences, all in compliance with the requirements of Section 900 *et seq.* of the California Government Code.  Their claims were rejected on May 9, 2012.  (True and correct copies of the Notices of Rejection are attached hereto as Exhibit B.)

**DAMAGES**

27.     As a direct result of the incident, SO and LAVERDURE sustained severe and serious physical injuries, possibly rendering them disabled for life.  SO and LAVERDURE suffered, and continue to suffer significant lost income.  SO and LAVERDURE suffered and continue to suffer severe mental and emotional distress and anguish, which SO and LAVERDURE.  SO and LAVERDURE's emotional distress injuries include, but are not limited to, anxiety associated with physical pain, humiliation and depression.

28.     As a result of Defendants' conduct as alleged herein, SO and LAVERDURE were required to and did employ the services of hospitals, physicians, surgeons, nurses and other professional services for SO and LAVERDURE's medical treatments and incurred expenses for medical treatments, including emergency-medical response, hospital and mental health care.

29.     Defendants' conduct was willful and deliberate and was of such a nature that punitive damages should be imposed upon each individual defendant in an amount to punish them and make an example of them.  SO and LAVERDURE seek punitive damages in an amount to be determined for Defendants' interference with their exercise of their First Amendment Right of free assembly, Defendants' violation of their First Amendment rights to seek redress and their willful conspiracy with Carrigg and Abu-Nasser, and the violations of Article I, Section 28(b)(9)(13) of the California Constitution.

30.     California Civil Code Section 52.1 provides for the recovery of damages as described in Civil Code Section 52, which provides that "[W]hoever denies, aids or incites a denial, or makes any discrimination or distinction contrary to Section 51, 51.5, or 51.6, is liable for each and every offense for the actual damages, . . . up to a maximum of three times the amount of

actual damage but in no case less than four thousand dollars ($4,000), and any attorneys fees that may be determined by the Court.

## FIRST CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CIVIL CODE SECTION 52.1
**(ALL DEFENDANTS)**

31.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 30, as though fully set forth at length herein.

32.     California Civil Code Section 52.1 (the Bane Act) provides that any individual whose exercise or enjoyment of rights secured by the Constitution or laws of the United States or of rights secured by the Constitution or laws of this State, has been interfered with, or attempted to be interfered with by threats, intimidation or coercion may bring a civil action for damages, including but not limited to damages under Civil Code Section 52, injunctive relief and other appropriate equitable relief.

33.     Defendants violated and aided and assisted the violation of SO and LAVERDURE's rights under the First Amendment of the U.S. Constitution, and under Article I, Section 2 of the California Constitution to engage in expressive activity and peaceably assemble, and to petition the government for a redress of grievances through intimidation, threats and coercion, including the violent assault with a deadly weapon by Carrigg, all in violation of California's Bane Act.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

## SECOND CAUSE OF ACTION
### VIOLATION OF CALIFORNIA CONSTITUTION ARTICLE I, §2
**(ALL DEFENDANTS)**

34.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 33, as though fully set forth at length herein.

35.     Article I, § 2(a) of the California Constitution guarantees that citizens of California have the right to instruct their representatives, petition government for redress of grievances and assemble freely to consult for the common good.

36.     Defendants violated and aided and assisted the violation of SO and LAVERDURE's rights under Article I, § 2 of the California Constitution to engage in expressive activity and peaceably assemble, and to petition the government for a redress of grievances.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### THIRD CAUSE OF ACTION
### AIDING & ABETTING IN COMMISSION OF ASSAULT
### (ALL DEFENDANTS)

37.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 36, as though fully set forth at length herein.

38.     Carrigg and Abu-Nasser had a duty to act reasonably and with respect for SO and LAVERDURE's constitutional rights to petition government for redress of grievances and assemble freely to consult for the common good, and not to engage in conduct which causes individuals to reasonably fear imminent offensive harmful touching.

39.     Defendants aided and assisted the assault of SO and LAVERDURE by Carrigg and Abu-Nasser by the use of a deadly weapon (a motor vehicle) to inflict great bodily injury upon SO and LAVERDURE and to cause them to be placed in fear of an immediate harmful offensive touching by giving substantial assistance and encouragement to Carrigg and Abu-Nasser in the commission of their assault against SO and LAVERDURE.

40.     The conduct of the Defendants and each of them as alleged herein was a substantial factor in causing the serious harms and injuries to SO and LAVERDURE as alleged herein.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### FOURTH CAUSE OF ACTION
### AIDING & ABETTING IN COMMISSION OF BATTERY
### (ALL DEFENDANTS)

41.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 40, as though fully set forth at length herein.

42.     Carrigg and Abu-Nasser had a duty to act reasonably and with respect for

SO and LAVERDURE's constitutional rights to petition government for redress of grievances and assemble freely to consult for the common good, and not to engage in conduct which causes harmful or offensive touching to an individual's person.

43.     Defendants aided and assisted the battery of SO and LAVERDURE by Carrigg and Abu-Nasser by the use of a deadly weapon (a motor vehicle) to inflict great bodily injury upon SO and LAVERDURE and to inflict great bodily injury by giving substantial assistance and encouragement to Carrigg and Abu-Nasser in the commission of their battery against SO and LAVERDURE.

44.     The conduct of the Defendants and each of them as alleged herein was a substantial factor in causing the serious harms and injuries to SO and LAVERDURE as alleged herein.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### FIFTH CAUSE OF ACTION
### <u>VIOLATION OF 42 U. S. C. § 1983</u>
### (ALL INDIVIDUAL DEFENDANTS)

45.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 44, as though fully set forth at length herein.

46.     The actions of the individual Defendants as set forth herein aided and abetted the violation of SO and LAVERDURE's rights to freedom of assembly guaranteed by the First Amendment to the U.S. Constitution.

47.     The individual Defendants each personally and affirmatively participated in the deprivation of SO and LAVERDURE'S constitutional rights under the First Amendment while acting under color of law and thereby violated 42 U.S.C. Section 1983.  Each individual Defendant either personally participated in the unlawful conduct, or acted jointly or conspired with others who did so; or authorized, acquiesced or set into motion policies, plans or actions that led to the unlawful conduct; or failed to take action to prevent the unlawful conduct; or failed and refused with deliberate indifference to SO and LAVERDURE's constitutional rights to initiate and maintain adequate training and supervision; and/or ratified the unlawful conduct that occurred by

agents and officers under their direction and control, including but not limited to failing to take remedial or disciplinary action.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### SIXTH CAUSE OF ACTION
### CONSPIRACY TO VIOLATE CIVIL RIGHTS
### (ALL INDIVIDUAL DEFENDANTS)

48.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 47, as though fully set forth at length herein.

49.     The actions of the individual Defendants as set forth herein aided and abetted the violation of SO and LAVERDURE's rights to freedom of assembly guaranteed by the First Amendment to the U.S. Constitution.  The individual Defendants conspired with Carrigg and/or Abu-Nasser and/or their agent to deprive SO and LAVERDURE of their constitutional rights, including the right of freedom of speech and freedom of association.

**WHEREFORE**, Plaintiffs pray for relief as hereinafter set forth.

### SEVENTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. SECTION 1983
### (DEFENDANT CITY OF OAKLAND)

50.     Plaintiffs refer to and incorporate by reference Paragraphs 1 through 49, as though fully set forth at length herein.

51.      Since at least 2003, Defendant CITY has adopted a custom, practice and "de facto" policy  to violate the First Amendment rights of citizens of the City of Oakland. Defendant CITY and OPD's policies, practices and/or customs demonstrated an intent to limit, restrict and/or interfere with the First Amendment rights of the citizens of Oakland to engage in peaceful assembly.  Many of the actions taken by OPD and its agents on November 2, 2011 were consistent with these policies, practices and customs.

52.     On or about November 4, 2004, then-OPD Chief Richard Word approved an agreement for a policy "to use minimal reliance on the use of physical force and authority needed to address a crowd management or crowd control issue."  (*Local 10, International Longshore and*

*Warehouse Union v. City of Oakland*, No. C03-2961 THE (hereinafter "Local 10"), Stipulation and Order Approving Partial Settlement). Defendant CITY repeatedly violated this agreement and policy in its response to the demonstrations occurring as part of Occupy Oakland.

53.     Plaintiffs are informed and believe and thereon allege that the use of a deadly weapon to attack them was sanctioned by and arose under Defendants' "de facto" policy to interfere with their ability to engage in expressive activity and assembly in and around the plaza in support of the Occupy Oakland movement. Plaintiffs contend that there is a causal link between the violation of their First Amendment rights and Defendant CITY's decision to violate the Local 10 agreements and ratification of acts of violence against Occupy Oakland protesters.

54.     At all times mentioned herein, up to and including the present, Defendant CITY has failed to properly train its OPD officers and/or agents how to report, monitor and/or respond to crowds engaging in protected First Amendment activities and/or how to implement the Local 10 agreement and policies, and that the failure to train was a substantial factor in the harm and injuries suffered by SO and LAVERDURE.

55.     Their failure to train demonstrated an indifference on the part of Defendant CITY to the safety and rights of Plaintiffs and was a proximate and legal cause of their injuries in violation of 42 U.S.C. Section 1983. The violation of their constitutional right to freedom of assembly would have been avoided had Defendant properly trained its OPD officers.

**WHEREFORE**, Plaintiffs pray for judgment against Defendants as follows:

A.     Compensatory and special damages, including damages for mental and emotional distress, in an amount in excess of $250,000.00 to be determined at the time of trial;

B.     Punitive damages against the individual defendants in an amount necessary to punish and make a example of the individual Defendants;

C.     Costs of suit incurred herein, including reasonable attorneys' fees pursuant to 42 U.S.C. Section 1988, California Civil Code Section 52.1 and any other applicable authority;

D.     Injunctive Relief to redress the recurring violations of First Amendment constitutional rights and prohibiting any actions the Court deems necessary to preserve and protect

1  the Plaintiffs' constitutional rights under the First Amendment;

2          E.        Such other and further relief as the Court deems just and proper.

3  Dated: January 9, 2013                    PRICE AND ASSOCIATES

4

5                                       /s/ Pamela Y. Price
6                                    _____
                                     PAMELA Y. PRICE, Attorneys for Plaintiffs
7                                    MARGARET SO and LANCE LAVERDURE

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28