**United States District Court**
For the Northern District of California

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

MARGARET SO, et al.,

Plaintiff(s),

v.

BAY AREA RAPID TRANSIT, et al.,

Defendant(s).

_____/

No. C-12-05671 DMR

**ORDER GRANTING MOTION FOR JUDGMENT ON THE PLEADINGS [DOCKET NO. 24] AND GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS [DOCKET NO. 34]**

Before the court is a motion for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) by Defendant San Francisco Bay Area Rapid Transit District ("BART").[1]  ["MJP," Docket No. 24.]  Also before the court is a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) by Defendants Anisa McNack, Y. Joseph, Andy Alkire, and Mark Macaulay (the "individual BART Defendants").  ["MTD," Docket No. 34.]  For the reasons stated below, the motion on the pleadings is granted and the motion to dismiss is granted in part and denied in part.

**I.  BACKGROUND**

Plaintiffs Margaret So and Lance Laverdure filed a Complaint on November 5, 2012, and a First Amended Complaint ("FAC") on January 9, 2013, against Defendants BART, the City of Oakland ("City"), Jeff Israel, Eric Breshears, John Hargraves, Anisa McNack, Y. Joseph, Andy

---

[1]  BART was erroneously sued as "Bay Area Rapid Transit."

Alkire, Mark Macaulay, and unnamed Doe defendants.  [Docket Nos. 1, 4.]  The following allegations are taken from the FAC unless otherwise noted.

**A. Parties**

      BART is a municipal corporation duly organized and existing under the laws of the State of California.  As an employer, BART is responsible for the acts and omissions of its agents and employees, including the individually named Defendants.  FAC at ¶ 4.

      Defendants Israel, Breshears, and Hargraves are police supervisors employed by the City and assigned to the Oakland Police Department ("OPD") and were at all relevant times "acting within the course and scope of [their] employment as [] police supervisor[s] for OPD and under color of state law." *Id.* at ¶¶ 6-8.

      Defendants McNack and Joseph are police officers employed by BART and were at all relevant times "acting within the course and scope of [their] employment as [] police officer[s] for Defendant BART and under color of state law. [Their] actions were done under the supervision, direction and control of Defendants BART and OPD." *Id.* at ¶¶ 9-10.

      Defendant Alkire is a lieutenant employed by BART and was at all relevant times "acting within the course and scope of his employment as a lieutenant for Defendant BART and under color of state law.  His actions were done under the supervision, direction and control of Defendants BART and OPD." *Id.* at ¶ 11.

      Defendant Macaulay is a sergeant employed by BART and was at all relevant times "acting within the course and scope of his employment as a sergeant for Defendant BART and under color of state law.  His actions were done under the supervision, direction and control of Defendants BART and OPD." *Id.* at ¶ 12.

**B. Incident**

      On the evening of November 2, 2011, Plaintiffs were participating with hundreds of people in the "Occupy Oakland" protests near the intersection of 11th Street and Broadway in Oakland.  *Id.* at ¶ 16.  As Plaintiffs and dozens of others crossed the street, a vehicle was driving slowly and erratically through the crowd toward them.  *Id.* at ¶ 17.  The driver of the vehicle was Jan Carrigg.  In the passenger seat was Sara Abu-Nasser.  Carrigg stopped the vehicle in front of Plaintiffs, then

United States District Court

For the Northern District of California

intentionally accelerated into the crowd of pedestrians, hitting and seriously injuring Plaintiffs. *Id.* Carrigg attempted to drive away, but the vehicle was blocked by people at the scene. Carrigg exited the vehicle and angrily launched himself into the crowd attempting to provoke a fight. He behaved in an extreme aggressive and hostile manner toward the crowd. Abu-Nasser briefly occupied the driver's seat; Plaintiffs believe she did so to conceal the fact that Carrigg had been driving. *Id.* at ¶ 18. A person that Plaintiffs identify as "Defendant Franklin"[2] then spoke to Carrigg and Abu-Nasser at the scene. At that point, "Defendants appeared to be BART police" cleared a path for Carrigg and Abu-Nasser to leave the scene. *Id.* at ¶ 19.

Defendants also failed to (1) conduct any on scene sobriety tests; (2) administer any blood or breath alcohol tests; (3) photograph the scene; (4) impound the vehicle; (5) obtain the name of either the driver or passenger; (6) interview the people injured in the incident for weeks; and (7) interview any eye witnesses among the dozens of people who were not only present but offering to give statements and recount what they saw. FAC at ¶ 20. These failures were in direct violation of BART and OPD's internal policies and manuals regarding crime scene investigation. *Id.* But for the fact that Plaintiffs were exercising their First Amendment right of assembly as part of the Occupy Oakland protests, Defendants would have done their job in a proper manner for the purpose of having Carrigg and Abu-Nasser face prosecution for their actions against Plaintiffs. *Id.* at ¶ 22. Thus, Defendants retaliated against Plaintiffs for exercising their First Amendment rights of freedom of assembly, and openly cooperated with Carrigg and Abu-Nasser in order to permit them to flee the scene of the crime without preserving any evidence, thus depriving Plaintiffs of their First Amendment right to seek redress from the government. *Id.* at ¶¶ 22-23.

Plaintiffs allege upon information and belief that at the time of the incident, BART and its agents and employees were operating in Oakland and assisting OPD pursuant to a mutual aid plan with the consent of the OPD and as authorized by California Government Code § 8550 et seq., and

---

[2] "Defendant Franklin" is not named as a defendant or otherwise mentioned in the FAC. Plaintiffs' counsel has noted that this allegation is mistaken, and that if given leave to amend, she would amend "remove 'FRANKLIN' as it appears in the First Amended Complaint and replace 'Yolanda Joseph' as the subject of the allegation." Price Decl. [Docket No. 44] at ¶ 2(g). Plaintiffs may so amend the allegation.

United States District Court

For the Northern District of California

1    that Israel and Breshears were in charge of the relevant area at the time of the incident and directed

2    BART personnel to violate Plaintiffs' constitutional rights by aiding and assisting the escape of

3    Carrigg and Abu-Nasser. *Id.* at ¶ 21.

4          On March 19, 2012, Plaintiffs presented BART with government tort claims that detailed the

5    injuries, losses, and damages suffered by Plaintiffs as a result of the above-described circumstances.

6    Their claims were rejected on May 3, 2012. On April 30, 2012, Plaintiffs presented the City with

7    government tort claims which detailed the injuries, losses, and damages suffered by Plaintiffs as a

8    result of the above-described circumstances. These claims were rejected on May 9, 2012. *Id.* at ¶¶

9    25-26.

10         As a result of the incident, Plaintiffs sustained severe and serious physical injuries, possibly

11   rendering them disabled for life. *Id.* at ¶ 27.

12   **C. Causes of Action**

13         The FAC brings seven causes of action. The first cause of action alleges that all Defendants

14   violated California Civil Code § 52.1[3] by aiding and assisting the violation of Plaintiffs' rights under

15   the First Amendment of the U.S. Constitution and under Article I, Section 2 of the California

16   Constitution to engage in expressive activity, peaceably assemble, and petition the government for

17   redress of grievances, through intimidation, threats and coercion, including by aiding and assisting

18   with the violent assault with a deadly weapon by Carrigg.

19         The second cause of action alleges that all Defendants violated Article I, Section 2 of the

20   California Constitution by aiding and assisting the violation of Plaintiffs' rights to engage in

21   expressive activity, peaceably assemble, and petition the government for redress of grievances.

22   _____

23         [3] California Civil Code § 52.1, commonly referred to as the Bane Act, states, in relevant part:

24         If a person or persons, whether or not acting under color of law, interferes by threats,
           intimidation, or coercion, or attempts to interfere by threats, intimidation, or coercion, with
25         the exercise or enjoyment by any individual or individuals of rights secured by the
           Constitution or laws of the United States, or of the rights secured by the Constitution or laws
26         of this state, the Attorney General, or any district attorney or city attorney may bring a civil
           action for injunctive and other appropriate equitable relief . . . and may also seek a civil
27         penalty.

28   Cal. Civ. Code § 52.1(a). Section 52.1(b) creates a private right of action for damages and/or
     equitable relief based on the actions described in subsection (a).

United States District Court

For the Northern District of California

1    The third and fourth causes of action allege that all Defendants aided and abetted the assault

2    and battery of Plaintiffs by Carrigg and Abu-Nasser.

3    The fifth cause of action is a claim under 42 U.S.C. § 1983 against all individual Defendants.

4    In this claim, Plaintiffs assert that the individual Defendants "participated in the deprivation of

5    [Plaintiffs'] constitutional rights under the First Amendment."  FAC at ¶ 47.

6    The sixth cause of action, for "Conspiracy to Violate Civil Rights," alleges that the

7    individual Defendants conspired with Carrigg and/or Abu-Nasser to deprive Plaintiffs of their First

8    Amendment rights to freedom of assembly, association, and speech.

9    Finally, the seventh cause of action is a claim under 42 U.S.C. § 1983 against the City, based

10   on the City's "policies, practices and/or customs demonstrat[ing] an intent to limit, restrict and/or

11   interfere with the First Amended rights of the citizens of Oakland to engage in peaceful assembly."

12   FAC at ¶¶ 31-55.

### II.  LEGAL STANDARD

14   After the pleadings are closed, any party may move for judgment on the pleadings pursuant

15   to Federal Rule of Civil Procedure 12(c).  A Rule 12(c) motion challenges the legal sufficiency of

16   the opposing party's pleadings and operates in much the same manner as a motion to dismiss under

17   Rule 12(b)(6). *Morgan v. Cnty. of Yolo*, 436 F. Supp. 2d 1152, 1154-55 (E.D. Cal. 2006) *aff'd*, 277

18   F. App'x 734 (9th Cir. 2008).  "The principal difference between motions filed pursuant to Rule

19   12(b) and Rule 12(c) is the time of filing." *Dworkin v. Hustler Magazine Inc.*, 867 F.2d 1188, 1192

20   (9th Cir. 1989).  Rule 12(b)(6) motions are typically brought before the defendant files an answer,

21   while a motion for judgment on the pleadings can only be brought after the pleadings are closed.

22   Fed. R. Civ. P. 12(b)(6), 12(c); *Elvig v. Calvin Presbyterian Church*, 375 F.3d 951, 954 (9th Cir.

23   2004).  "Because the motions are functionally identical, the same standard of review applicable to a

24   Rule 12(b) motion applies to its Rule 12(c) analog." *Dworkin*, 867 F.2d at 1192.

25   A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the claims alleged in

26   the complaint. *See Parks Sch. of Bus., Inc. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  When

27   reviewing a motion to dismiss for failure to state a claim, the court must "accept as true all of the

28   factual allegations contained in the complaint," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per

curiam) (citation omitted), and may dismiss the case "only where there is no cognizable legal theory" or there is an absence of "sufficient factual matter to state a facially plausible claim to relief." *Shroyer v. New Cingular Wireless Servs., Inc.*, 622 F.3d 1035, 1041 (9th Cir. 2010) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)) (quotation marks omitted). Likewise, judgment on the pleadings under Rule 12(c) is appropriate if, assuming the truth of all materials facts pled in the complaint, the moving party is nonetheless entitled to judgment as a matter of law. *Heliotrope Gen., Inc. v. Ford Motor Co.,* 189 F.3d 971, 979-80 (9th Cir. 1999). A claim has facial plausibility when a plaintiff "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citation omitted). In other words, the facts alleged must demonstrate "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)); *see Lee v. City of L.A.*, 250 F.3d 668, 679 (9th Cir. 2001), *overruled on other grounds by Galbraith v. Cnty. of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Under Federal Rule of Civil Procedure 15(a), leave to amend should be granted as a matter of course, at least until the defendant files a responsive pleading. After that point, leave to amend should be granted unless amendment would cause prejudice to the opposing party, is sought in bad faith, is futile, or creates undue delay. Fed. R. Civ. P. 15(a). Rule 15(a) provides that the court should "freely give leave when justice so requires." *Id.* "This policy is 'to be applied with extreme liberality.'" *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1051 (9th Cir. 2003) (quotation omitted). In the absence of an "apparent reason," such as undue delay, bad faith, dilatory motive, prejudice to defendants, futility of the amendments, or repeated failure to cure deficiencies in the Complaint by prior amendment, it is an abuse of discretion for a district court to refuse to grant leave to amend a complaint. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

### III. DISCUSSION

BART first contends that the FAC fails to establish the statutory basis for BART's liability. BART then argues that Plaintiffs have failed to allege that BART or its employees had a duty to protect Plaintiffs. Finally, BART and the individual BART Defendants argue that the FAC fails to

1   state claims against the individual BART Defendants for which BART may be vicariously liable,

2   either because they are inadequately pleaded or because statutory immunities shield the individual

3   BART Defendants from liability.  Each of these arguments will be considered in turn.

4   **A.  Failure to Plead Vicarious Liability**

5           BART asserts that the four claims asserted against it must fail because California public

6   entities are not liable for the acts of their employees unless otherwise provided by statute.  For this

7   argument, BART cites Section 815 of the California Government Code.

8           Section 815 provides that public entities are not generally liable for injuries caused by their

9   employees, unless otherwise provided by statute.  Cal. Gov. Code § 815.[4]  In turn, Section 815.2

10  provides the statutory basis for public entity liability for injuries caused by employees acting within

11  the scope of their employment:

12          (a) A public entity is liable for injury proximately caused by an act or omission of an
            employee of the public entity within the scope of his employment if the act or omission
13          would, apart from this section, have given rise to a cause of action against that employee or
            his personal representative.
14
            (b) Except as otherwise provided by statute, a public entity is not liable for an injury
15          resulting from an act or omission of an employee of the public entity where the employee is
            immune from liability.
16
    Cal. Gov. Code § 815.2.  *See also Robinson v. Solano Cnty.*, 278 F.3d 1007, 1016 (9th Cir. 2002)
17
    ("California . . . imposes liability on [public entities] under the doctrine of respondeat superior for
18
    acts of county employees; it grants immunity to [public entities] only where the public employee
19
    would also be immune.") (citing Cal. Gov. Code § 815.2); *Scott v. County of Los Angeles,* 27 Cal.
20
    App. 4th 125, 139-40, 32 Cal. Rptr. 643 (Cal. Ct. App. 1994) (emphasis omitted).  "[I]n
21

22          [4]  Cal. Gov. Code § 815 states:

23          Except as otherwise provided by statute:

24          (a) A public entity is not liable for an injury, whether such injury arises out of an act or
            omission of the public entity or a public employee or any other person.
25
            (b) The liability of a public entity established by this part (commencing with Section
26          814) is subject to any immunity of the public entity provided by statute, including this
            part, and is subject to any defenses that would be available to the public entity if it were
27          a private person.

28

**United States District Court**
For the Northern District of California

governmental tort cases, the rule is liability, immunity is the exception." *White v. County of Orange,* 166 Cal. App. 3d 566, 570, 212 Cal. Rptr. 493 (Cal. Ct. App. 1985) (citation omitted).

BART does not dispute that it could be liable as the employer or principal of some of the individual Defendants under a theory of vicarious liability or respondeat superior. BART simply insists that the FAC inadequately pleads vicarious liability. MJP at 6 ("The FAC's sole attempt to plead facts alleging or identifying the alleged duty BART owed is contained in one sentence: 'As an employer, [BART] is responsible for the acts and omissions of its agents and employees, including the individually named Defendants and Does 1-25.' Neither this sentence nor any other portion of the FAC identifies the statute purportedly imposing BART's duty as an employer of the individually named defendants."). However, the FAC also alleges that McNack, Joseph, Alkire, and Macaulay were employed by BART and were acting within the scope of their employment at all relevant times. It is reasonable to interpret the FAC as asserting claims against BART based upon the acts of its employees.

At the hearing, Plaintiffs' counsel clarified that the claims Plaintiffs asserted against BART were solely on the basis of BART's vicarious liability for the actions of its employees. For the reasons stated below, none of the four state law claims against the individual BART Defendants for which BART may be vicariously liable survive this order, and the court grants leave to amend only one of these claims. However, if Plaintiffs choose to amend and restate that claim, they should also amend the complaint to make clear that they assert the state law claim against BART solely on a theory of liability for the acts of its employees operating within the scope of their employment, pursuant to Section 815.2.

**B. Immunity of Individual BART Defendants**

BART argues that several state law immunities shield the individual BART Defendants from liability for any of the state claims and that BART is consequently also shielded from liability. California Government Code § 815.2(b) (public entities are immune from liability for acts and omissions of its employees under the doctrine of respondeat superior if the employee is immune).

**i. California Government Code § 845**

United States District Court
For the Northern District of California

1    Under California Government Code § 845, "[n]either a public entity nor a public employee is

2   liable for failure to establish a police department or otherwise to provide police protection service or,

3   if police protection service is provided, for failure to provide sufficient police protection service."

4   "This immunity is meant to protect the budgetary and political decisions which are involved in

5   hiring and deploying a police force.  Thus, section 845 was not intended to provide immunity

6   against a particular police officer's negligence in the performance of his duty in a particular

7   situation."  *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 1402, 16 Cal. Rptr. 2d 113 (Cal.

8   Ct. App. 1993) (no Section 845 immunity for detective who had duty to warn homicide victim).

9    Courts appear to apply Section 845 immunity to circumstances where police are alleged to

10  have failed to deploy prospective protective services, such as by failing to provide armed security on

11  buses, failing to provide police personnel to patrol a parking lot where a sexual assault subsequently

12  occurred, or failing to dispatch police to a residence where a woman claimed her estranged husband

13  had threatened to kill her.  All of the cases cited by BART regarding Section 845 immunity fall

14  under this description.[5]  *See also Gates v. Superior Court*, 32 Cal. App. 4th 481, 505-07, 38 Cal.

15  Rptr. 2d 489, 503-04 (1995) (summarizing cases; applying Section 845 immunity to LAPD officers

16  sued for withdrawing from an area at the start of a riot).  In each of these scenarios in which Section

17  845 immunity applied, the reason the aggrieved party was injured was because police were not

18  present.  BART has pointed this court to no cases applying Section 845 immunity under

19  circumstances similar to those here, where the police are alleged to have intentionally declined to

20  investigate and arrest assailants *after* the commission of the assault in retaliation for the victims'

21

22

23    [5]  *See Zelig v. Cnty. of Los Angeles*, 27 Cal. 4th 1112, 1142-43 (2002) (immunity for failure to

24   equip and deploy deputies, use metal detectors, post signs or undertake other protective measures to
     protect woman who was subsequently murdered by her ex-husband at a family court proceeding);
     *Turner v. State of California*, 232 Cal. App. 3d 883, 894-95, 284 Cal. Rptr. 349 (Cal. Ct. App. 1991)

25   (immunity for failure provide adequate security patrols in the parking lot of the state fairgrounds despite
     the foreseeability of gang violence there); *Slapin v. Los Angeles International Airport*, 65 Cal. App. 3d

26   484, 487, 135 Cal. Rptr. 296 (Cal. Ct. App. 1976) (immunity for failure to provide police patrols or
     sufficient police patrols of the parking lot of a public airport despite reports of earlier assaults); *Moncur*

27   *v. City of Los Angeles*, 68 Cal. App. 3d 118, 122, 137 Cal. Rptr. 289 (Cal. Ct. App. 1977) (immunity
     for failure to prevent the placement of a bomb in an airport locker by providing searches in or

28   surveillance of the airport common area).

1    exercise of their expressive rights.  The court thus declines to interpret Section 845 to provide

2    immunity for the BART officers under the circumstances alleged in the FAC.

3        **ii.  California Government Code § 846**

4        Under California Government Code § 846, "[n]either a public entity nor a public employee is

5    liable for injury caused by the failure to make an arrest or by the failure to retain an arrested person

6    in custody."

7        "Courts have routinely applied Section 846 immunity where police officers release someone

8    who then goes on to harm a third party."  *Lum v. Cnty. of San Joaquin*, 756 F. Supp. 2d 1243, 1256

9    (E.D. Cal. 2010) (citing *Santa Barbara v. Superior Court,* 15 Cal. App. 3d 751, 93 Cal. Rptr. 406

10   (Cal. Ct. App. 1971)).  In *Lum*, the court declined to extend Section 846 immunity to defendant

11   public entities and police officers who had released an arrestee with mental health issues without

12   transportation, money, phone, shoes, or notification to his family who subsequently died by

13   accidental drowning in a nearby river.  The court stated:

14       The purpose of the statute is to prevent police from over-using their arrest power merely to
         avoid civil liability for harm that results from failure to arrest and detain. "[The power to
15       make an arrest] is strictly limited and the abuse of such power can result in civil liability. It
         would be contrary to public policy, simultaneously to permit the imposition of civil liability
16       for a failure to exercise the power. Hence the [§ 846] immunity is a logical adjunct to the
         public policy." *Lehto v. City of Oxnard,* 171 Cal. App. 3d 285, 217 Cal.Rptr. 450 (2d
17       District, 1985).  The court concludes that the purpose of the statute is ***to provide immunity to
         the public entity or officer from liability for any  wrongdoing by a released prisoner that
18       harms a third party***.

19   *Id.* at 1256-57 (emphasis added).  *See also Hernandez v. City of San Jose* 14 Cal. App. 4th 129, 134,

20   17 Cal. Rptr. 2d 589 (Cal. Ct. App. 1993). ("Many recent cases which have considered what duty a

21   police officers owes to members of the public have concluded the police have no duty to protect

22   individuals from potential wrongdoers.") (applying Section 846 immunity for officers' failure to

23   take minor into custody for curfew violations where minor subsequently died in traffic accident)

24   (citations omitted).

25       BART points the court to only one case applying Section 846 to a police decision not to

26   investigate an apparent crime already committed or arrest the perpetrators.  In *Michenfelder v. City*

27   *of Torrance*, 28 Cal. App. 3d 202, 104 Cal. Rptr. 501 (Cal. Ct. App. 1972), the court recited the

28   immunities under Sections 846, 818.2, 821, and 820.2, and held them all to apply to allegedly

10

United States District Court

For the Northern District of California

negligent police officers who had declined to arrest or stop franchisors who entered the plaintiff's retail franchise, changed the locks, and removed fixtures, supplies, and goods, where those franchisors were utilizing self-help with respect to a claim of right against the plaintiff. *Id.* at 204. However, the court appeared to hold the police officers immune under the discretionary immunity provisions of Sections 820.2, 818.2, and 821, discussed below, rather than the immunity for failure to arrest under Section 846, as the opinion focused on the police officers proper exercise of "their own discretion after they had observed what was happening and had listened to the explanation of the persons present." *Id.* at 206-07. In any event, even if *Michenfelder* stands for the proposition that Section 846 immunizes police officers from liability for failing to make an arrest in a crime already committed in some circumstances, it contradicts other cases that suggest the immunity applies only to potential wrongdoers, and it is distinguishable from the facts pled because here Plaintiffs allege that the BART's failure to arrest or investigate Carrigg was part of a conspiracy to deprive Plaintiffs of their constitutional rights.

Therefore, the court concludes that Section 846 immunity does not apply in the circumstances presented.

### iii. California Government Code §§ 818.2, 821, and 820.2

California Government Code § 820.2 shields public employees from liability for their discretionary acts.[6] Sections 818.2 and 821 are specific applications of Section 820.2. Cal. Gov. Code §§ 820.2 (Senate Legislative Committee comments). Under Section 818.2, "[a] public *entity* is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law." Cal. Gov. Code § 818.2 (emphasis added). Section § 821 provides the same for public *employees*. As BART makes no argument for the applicability of Section 820.2 independent of the applicability of Sections 818.2 and 821, the court will consider all of three statutes together.

The cases examining these statutes have focused on what qualifies as a "discretionary act" for which public employees or entities may be immune from liability. In *Johnson v. State of*

---

[6] Cal. Gov. Code § 820.2 states: "Except as otherwise provided by statute, a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused."

*California*, 69 Cal. 2d 782, 793 (1968), the "[California] Supreme Court authoritatively construed section 820.2, and made a comprehensive analysis of the 'discretionary acts' which are clothed with immunity under that section." *Johnson v. Cnty. of Los Angeles*, 143 Cal. App. 3d 298, 312-13, 191 Cal. Rptr. 704 (Cal. Ct. App. 1983).   Noting that virtually every public act admits of some element of discretion, the *Johnson v. State* court articulated the distinction between immunized "discretionary" and nonimmunized "ministerial" acts.  It rejected a purely literal or mechanical analysis of the term "discretionary," and held that Section 820.2 affords immunity only for "basic policy decisions." *Johnson v. State*, Cal.2d at 793.  The court then set forth several of the policy considerations relevant to the governmental claim of immunity:

> Although it may not be possible to set forth a definitive rule which would determine in every instance whether a governmental agency is liable for discretionary acts of its officials, various factors furnish a means of deciding whether the agency in a particular case should have immunity, such as the importance to the public of the function involved, the extent to which governmental liability might impair free exercise of the function, and the availability to individuals affected of remedies other than tort suits for damages.

*Johnson v. State*, 69 Cal.2d at 789 (citations omitted).  "The *Johnson* [*v. State*] court made it clear that once the basic policy decision has been made, the role of immunity ends." *Johnson v. Cnty. of Los Angeles,* 143 Cal. App. 3d at 313.

Decisions to arrest or investigate are generally ministerial acts, except in certain fact-specific situations.  *See, e.g.*, *Gillan v. City of San Marino*, 147 Cal. App. 4th 1033, 55 Cal. Rptr. 3d 158 (2007) (decision of police officers to arrest plaintiff without probable cause was not "basic policy decision" covered by Section 820.2 immunity, but an operational decision by police purporting to apply the law); *Blankenhorn v. City of Orange*, 485 F.3d 463, 487 (9th Cir. 2007) ("[I]t has long been established that [Section 820.2] does not apply to officers who use unreasonable force in making an arrest.").  *But see McCarthy v. Frost*, 33 Cal. App. 3d 872, 876, 109 Cal. Rptr. 470 (Cal. Ct. App. 1973) (Section 820.2 immunized highway patrolmen "under the facts set forth" from liability for their failure to discover, investigate, or rescue a decedent in a vehicle whose survivors alleged the patrolmen had a duty to aid).

Furthermore, where police officers create the risk of harm by conspiring to bring harm to members of the public, those officers have a non-discretionary duty to warn members of the public

of the impending danger.  *See, e.g.*, *Bauldry v. Cnty. of Contra Costa*, No. 12-cv-3943 CRB, 2013 WL 1747906 (N.D. Cal. Apr. 23, 2013) ("[A] duty [to warn] may arise based on a conspiracy that places the victim in harm's way"; holding that Section 820.2 does not apply to police officers alleged to have perpetrated scheme to set up and arrest drunk drivers at the behest of their estranged wives so that DUI charges could be used against them in family court, because officers had non-discretionary duty to warn drunk drivers of the family court consequences of the scheme).

Here, Plaintiffs allege that BART employees conspired to permit the person who had struck Plaintiffs with his vehicle to leave the scene, in retaliation for Plaintiffs' exercise of their constitutional rights.  The alleged wrong is not police inaction, but retaliatory concealment of a crime and the destruction of evidence.  Under these circumstances, and in light of the policy considerations for the application of discretionary immunity laid out in *Johnson v. State*, the BART employees' decision not to arrest Carrigg and/or Abu-Nasser or investigate the incident further cannot be said to be a "discretionary act."  Accordingly, the statutory immunities under Sections 818.2, 821, and 820.2 do not apply to the BART employees.

Because no statutory immunities bar the claims against the BART employees, no immunities extend to BART and consequently BART may be held vicariously liable for their actions under California Government Code § 815.2.

## C.  Claim 1: Violation of California Civil Code § 52.1

### i.  Duty to Protect

BART argues that the first two causes of action[7] fail because BART and its officers did not have a duty to protect Plaintiffs.  This argument is unavailing.  All of the cases cited by BART holding that police officers do not have a special duty to investigate, arrest, or otherwise protect a

_____

[7]  In the MJP, BART argued that the first *four* causes of action required Plaintiffs to allege that the BART employees owed Plaintiffs a duty.  However, BART effectively concedes in its Reply that the third and fourth causes of action, for aiding and abetting assault and battery, do not have a duty requirement.  Reply at 4.  Accordingly, the court only considers whether Plaintiffs are required to plead the existence of a duty in their first two causes of action.

United States District Court

For the Northern District of California

1    member of the public arise in the context of negligence, wrongful death resulting from negligence,

2    or negligent infliction of emotional distress claims against the police for failure to protect.[8]

3         Plaintiffs have not alleged a negligence claim against BART.  The first cause of action

4    alleges that all Defendants violated California Civil Code § 52.1 by aiding and assisting the violation

5    of Plaintiffs' expressive rights under the First Amendment of the U.S. Constitution and Article I,

6    Section 2 of the California Constitution.  The second cause of action alleges that all Defendants

7    violated Article I, Section 2 of the California Constitution by aiding and assisting the violation of

8    Plaintiffs' rights to engage in expressive activity and peaceably assemble, and to petition the

9    government for a redress of grievances.  *See also* Opp. [Docket No. 28] at 3 n. 1 ("Defendant

10   BART's 'public duty' argument is misdirected since Plaintiffs do not base their claims on a failure

11   to protect theory.  [] Plaintiffs . . . argue that the individual officers have no right to withhold police

12   services from them because they are exercising their First Amendment rights.").  At the hearing,

13   Plaintiffs' counsel confirmed that Plaintiffs' theory of the case is that Defendants intentionally

14   retaliated against Plaintiffs for their exercise of their federal and state constitutional rights, not that

15   Defendants committed negligent acts that damaged Plaintiffs.  Accordingly, Plaintiffs need not

16   allege that a duty existed between BART or the BART employees and Plaintiffs in order to state

17   these claims.

18        **ii.  Sufficiency of Pleading**

19

20   ───────────────

21        [8]  *See, e.g., Adams v. City of Fremont*, 68 Cal. App. 4th 243, 80 Cal. Rptr. 2d 196 (Cal. Ct. App.
     1999) (asserting NIED and wrongful death actions against police who failed to prevent suicide);
22   *Williams v. State of California*, 34 Cal. 3d 18 (1983) (negligence claim against police officers who did
     not investigate or pursue owner of a passing truck whose brake drum broke off and was propelled
23   through the windshield of plaintiff's car); *M.B. v. City of San Diego*, 233 Cal.App.3d 699, 284 Cal. Rptr.
     555 (Cal. Ct. App. 1991) (negligence claim against police who failed to investigate or take precautions
24   against man who later raped woman who reported her fear of him to the police); *Von Batsch v. American
     District Telegraph Company*, 175 Cal. App. 3d 1111, 222 Cal. Rptr. 239 (Cal. Ct. App. 1985) (wrongful
25   death complaint against city and burglar alarm company for failure to investigate and discover
     unauthorized entry of intruder who later killed plaintiffs' husband and employee); *Carpenter v. City of
26   Los Angeles*, 230 Cal. App. 3d 923, 281 Cal. Rptr. 500 (Cal. Ct. App. 1991) (negligent failure to warn
     witness of threats); *Wallace v. City of Los Angeles*, 12 Cal. App. 4th 1385, 16 Cal. Rptr. 2d 113 (Cal.
27   Ct. App. 1993) (negligent failure to warn witness of danger); *McCorkle v. City of Los Angeles*, 70 Cal.2d
     252 (1969) (negligent placement of motorist involved in traffic accident at dangerous intersection);
28   *Mann v. State of California*, 70 Cal. App. 3d 773, 139 Cal. Rptr. 82 (Cal. Ct. App. 1977) (negligent
     placement of stranded motorist on freeway).

1    BART and the individual BART Defendants argue that the FAC does not plead factual

2    allegations sufficient to support a reasonable inference that the BART officers violated California

3    Civil Code § 52.1 by aiding and assisting in the violation of Plaintiffs' rights under the First

4    Amendment of the U.S. Constitution and under Article I, Section 2 of the California.

5    The Bane Act allows individuals to sue for damages "where any person or persons, whether

6    or not acting under color of law, interferes by threats, intimidation or coercion, with the exercise or

7    enjoyment by any individuals of rights secured by the Constitution or laws of the United States . . .

8    ." Cal. Civ. Code §§ 52.1(a)-(b).  "The essence of a Bane Act claim is that the defendant, by the

9    specified improper means (i.e., 'threats, intimidation or coercion'), tried to or did prevent the

10   plaintiff from doing something he or she had the right to do under the law or to force the plaintiff to

11   do something that he or she was not required to do under the law." *Shoyoye v. Cnty. of Los Angeles*,

12   203 Cal. App. 4th 947, 955-56, 137 Cal. Rptr. 3d 839, 845 (Cal. Ct. App. 2012).  To establish a

13   violation of the Bane Act, neither violence nor threats of violence are required. *Cole v. Doe 1 thru 2*

14   *Officers of the City of Emeryville Police Dep't,* 387 F.Supp.2d 1084, 1103 (N.D.Cal. 2005).  Instead,

15   a plaintiff need only allege "an attempted or completed act of interference with a legal right,

16   accompanied by a form of coercion."  *Ballard*, 136 Cal. App. 4th at 408.  For example, "[u]se of law

17   enforcement authority to effectuate a stop, detention (including use of handcuffs), and search can

18   constitute interference by threat, intimidation, or coercion if the officer lacks probable cause to

19   initiate the stop, maintain the detention, and continue the search."  *Cole*, 387 F. Supp. 2d at 1103

20   (quotations omitted).  *See also Sanchez v. City of Fresno*, 914 F. Supp. 2d 1079, 1118 (E.D. Cal.

21   2012) (destruction of homeless shelters using heavy equipment by city employees may have been

22   inherently intimidating sufficient to allege a Bane Act violation).

23   Whether there was a violation of a right and whether that violation was accomplished by

24   threat, intimidation or coercion are separate analytical inquiries.  *City & County of San Francisco v.*

25   *Ballard,* 136 Cal.App.4th 381, 408, 39 Cal. Rptr. 3d 1 (Cal. Ct. App. 2006).  While the court finds

26   that Plaintiffs have sufficiently alleged a violation of their First Amendment rights, as discussed

27   below, Plaintiffs have not sufficiently alleged that that violation was accomplished by threat,

28   intimidation, or coercion.  The substance of Plaintiffs' allegations is that Defendants failed to arrest

United States District Court

For the Northern District of California

1    or investigate Abu-Nasser and Carrigg after they assaulted and battered Plaintiffs with their vehicle.

2    The cases cited by Plaintiffs involve *affirmative* police action, i.e., arrests by police officers and the

3    arrestees' subsequent false imprisonment claims or Section 1983 claims for arrest without probable

4    cause.  *See Shoyoye*, 203 Cal. App. 4th at (reversing summary judgment in favor of plaintiff who

5    alleged Bane Act violation on the basis of his arrest and subsequent erroneous over-detention);

6    *Richardson v. City of Antioch*, 722 F. Supp. 2d 1133, 1148 (N.D. Cal. 2010) (granting summary

7    judgment on Bane Act claim where police officers illegally entered house by kicking in door,

8    screamed at arrestee, tased another person in the house, and illegally arrested fourteen year-old girl).

9    Plaintiffs have not pointed the court to any cases in which acts of *omission*, e.g. failure to investigate

10   or make an arrest, meet the threat requirement of the Bane Act, and the court did not find any in its

11   own research.  *Compare Tripati v. City of Beverly Hills*, No. B187433, 2006 WL 2059546 at *1

12   (Cal. Ct. App. July 25, 2006) (threat requirement not met where plaintiff alleged only that

13   defendant's police officers failed to investigate plaintiff's claim that his property had been stolen);

14   *Rasmussen v. City of Los Angeles*, No. B234731, 2012 WL 5522738 at *2 (Cal. Ct. App. Nov. 15,

15   2012) (holding that Bane Act claim was time-barred, and noting that trial court had sustained a

16   demurrer on the claim because defendant's police officers' failure to investigate person that

17   plaintiffs suspected to be their daughter's murderer did not constitute the threats, intimidation or

18   coercion).  This court need not decide whether the "threat, intimidation or coercion" requirement of

19   the Bane Act can be met under circumstances such as those pleaded in this case.  At the hearing,

20   Plaintiffs' counsel conceded that cases interpreting the Bane Act do not support Plaintiffs' position,

21   and abandoned the argument.

22          However, Plaintiffs' counsel averred at the hearing that Plaintiffs could allege additional

23   facts to demonstrate that the individual BART Defendants were "more active participants" in the

24   incident, and requested leave to amend the complaint to add allegations to meet the "threats,

25

26

27

28

United States District Court

For the Northern District of California

1  intimation or coercion" element.[9]  The first cause of action is therefore dismissed with leave to

2  amend.

3  **D.  Claim 2: Violation of California Constitution Article I § 2**

4       The individual BART Defendants argue that the second cause of action must be dismissed

5  because Article I § 2 of the California Constitution does not create a private right of action in these

6  circumstances.

7       When determining whether a provision of the California Constitution creates a private cause

8  of action for damages, courts must apply a two-step analysis.  First, the court must look at the

9  language and history of the provision for an affirmative intent to authorize a claim for damages.

10  *Katzberg v. Regents of University of California*, 29 Cal.4th 300, 324, 58 P.3d 339 (2002).  Second,

11  in the absence of such affirmative intent, the court must weigh the following four factors: (1) the

12  adequacy of existing remedies; (2) the extent to which a constitutional tort action would change

13  established tort law; (3) the nature of the provision and the significance of the purpose that it seeks

14  to effectuate; and (4) whether any special factors would counsel hesitation in recognizing such a

15  damages action, such as "deference to legislative judgment, avoidance of adverse policy

16  consequences, considerations of governmental fiscal policy, practical issues of proof, and

17  competence of courts to assess particular types of damages."  *Katzberg*, 29 Cal.4th at 325-29.

18  ───────────────

19  [9]  Plaintiffs' counsel has stated that if Plaintiffs are given leave to amend the FAC, they would
further allege the following facts: On November 14, 2011, Defendants Mark Macauley, Anisa McNack
20  and Yolanda Joseph were standing at the 11th Street side of the City Center - Oakland/12th St. BART
station.  They were stationed there as part of an Occupy Oakland strike force.  At about 7:38 p.m. they
21  were personally told by a witness that someone was hit by a car.  They went outside to look.  Upon
exiting the BART station, Macauley, McNack and Joseph saw the Occupy protestors assisting two
22  victims and attempting to prevent a late model Mercedes Benz from leaving the area. The Mercedes
Benz was stopped in the crosswalk and pointed east near the corner of 11th and Broadway.  Macauley,
23  McNack, and Joseph then saw the aftermath of a crime and the victims lying on the ground.  They saw
Laverdure down on his back in front of the car, his body contorted away from the Mercedes.  They then
24  were alerted to So, who was lying on her back behind the Mercedes.  A crowd of witnesses,
predominantly members of the Occupy movement, told them to arrest the driver.  The crowd attempted
25  to aid by offering to give statements.  The crowd also prevented the driver from leaving the scene.
Alkire radioed instructions to Macauley, McNack, and Joseph, who then found the driver and passenger
26  of the Mercedes, Carrigg and Abu-Nasser, and spoke with them for some time.  They then helped
Carrigg get into the Mercedes.  They made a pathway through the crowd of people and helped Carrigg
27  and Abu-Nasser drive away.  Then Macauley, McNack and Joseph then left as well.  *See* Price Decl.
at ¶ 2(a)-(f).
28       In the interest of judicial economy, the court notes that these additional facts, without more,
would still be insufficient to state the "threat, intimidation or coercion" requirement of a Bane Act claim.

United States District Court

For the Northern District of California

Article I, Section 2 does not generally create a private right of action.  *See Degrassi v. Cook*, 29 Cal. 4th 333, 336, 58 P.3d 360 (2002).  In *Degrassi*, the seminal case analyzing the issue, the California Supreme Court declined to find a private right of action in Article I, Section 2 on the basis of the facts pled, where a plaintiff city council member alleged she had been subjected to a harassing course of conduct by other members of the city council and other individuals as a result of their opposition to her political views.  First, the court found no evidence of an intent behind Article I, Section 2 to imply private right of action for damages, because neither its language nor drafting history and voter information materials indicated an intent to authorize or foreclose damages.  *Id.* at 338-40.  The court then applied the four *Katzberg* factors, and found that (1) the plaintiff had meaningful alternative remedies because other statutes provided causes of action; (2) the California tort law put forth by the plaintiff did not recognize the type of liability she asserted; (3) the free speech clause reflects an important and fundamental interest, but when the first two factors "do not militate in favor of recognizing a constitutional tort action, the relative importance of the right, standing alone, is not a factor of great significance"; and (4) special factors counseled against recognizing a private cause of action because the threat of damages in that action might chill the political process, "subject[ing] to post hoc judicial scrutiny . . . the kind of political differences, squabbles, and perceived slights that are inherent in a representative government body such as a city council."  *Id.* at 343-44.

While the *Degrassi* court left open the possibility that a set of facts could theoretically support a private right of action, no court applying the *Katzberg* factors has recognized a private right of action for damages under Article I, Section 2 since *Degrassi*.  *See Cuviello v. City & Cnty. of San Francisco*, No. C-12-3034 EMC, -- F. Supp. 2d --, 2013 WL 1615606 at *25 (N.D. Cal. Apr. 15, 2013) (summarizing cases).

Plaintiffs present only conclusory arguments that fall short of the analysis required by *Katzberg* that is their burden to present.  *See Crusader Ins. Co. v. Scottsdale Ins. Co.*, 54 Cal. App. 4th 121, 133, 62 Cal. Rptr. 2d 620 (Cal. Ct. App. 1997) ("[W]hen neither the language nor the history of a statute indicates an intent to create a new private right to sue, a party contending for judicial recognition of such a right bears a heavy, perhaps insurmountable, burden of persuasion.").

As for the first *Katzberg* factor, Plaintiffs have adequate alternative remedies because, as discussed above, they could have brought a claim under Article I, Section 2 of the California Constitution in their first cause of action brought pursuant to California Civil Code § 52.1, had factual allegations been properly pleaded to support that claim.  *Accord Cuviello*, -- F. Supp. 2d --, 2013 WL 1615606 at *25 (finding that plaintiff had an adequate alternative remedy, evidenced by her Section 52.1 claim).  With regard to the second factor, Plaintiffs simply argue that allowing a private right of action under Article I § 2 would "merely recognize what is already implied: that government employees can be liable when they infringe on the constitutional rights of others."  The burden is on Plaintiffs to point to established California tort, rather than Section 1983 or another federal cause of action, that would appear to cover the same conduct, and Plaintiffs' conclusory argument does not meet that burden.  *Reinhardt v. Santa Clara County,* No. C-05-5143 HRL, 2006 WL 662741 at *8 (N.D.Cal. Mar. 15, 2006) (second *Katzberg* factor looks to "established tort law in California").  The third and fourth *Katzberg* factors are "not [] factor[s] of great significance" if the first and second factors militate against recognizing a private cause of action.  *Degrassi*, 29 Cal. 4th at 343; *Katzberg*, 29 Cal. 4th at 329.

For the foregoing reasons, Plaintiffs have failed to meet their burden of demonstrating why the court should find a private right of action in Article I, Section 2 of the California Constitution, and the second cause of action is therefore dismissed without leave to amend.

### E.  Claims 3 and 4: Aiding and Abetting Assault and Battery Claims

Plaintiffs have filed a state court civil action against Abu-Nasser and Carrigg, asserting causes of action for, inter alia, assault and battery.[10]  In the present lawsuit, Plaintiffs' third and fourth causes of action allege that all Defendants gave substantial assistance and encouragement to Abu-Nasser and Carrigg in their commission of an assault and battery against Plaintiffs through the

---

[10]  *See* Request for Judicial Notice [Docket No. 35] Ex. B (amended complaint in *Laverdure v. Abu-Nasser*, Alameda Superior Court No. RG12621600 (filed June 5, 2012)).  The court grants the individual BART Defendants' request for judicial notice of Exhibit B because it is a copy of documents reflecting official acts of the Superior Court of the State of California and its authenticity is capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  *See* Fed. R. Evid. 201(b).  Plaintiffs did not object to the request for judicial notice or dispute the accuracy of Exhibit B.

United States District Court
For the Northern District of California

use of a deadly weapon (the vehicle), which inflicted bodily injury and caused Plaintiffs to be placed in fear of an immediate harmful offensive touching.  FAC at ¶¶ 39, 43.[11]

Under California law, liability for aiding and abetting the commission of an intentional tort may attach in two ways:  if the person (1) knows the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other to so act or (2) gives substantial assistance to the other in accomplishing a tortious result and the person's own conduct, separately considered, constitutes a breach of duty to the third person." *Casey v. U.S. Bank National Ass'n*, 127 Cal. App. 4th 1138, 1144, 26 Cal. Rptr. 3d 401 (2005).  Plaintiffs appear to assert only the first form of aiding and abetting liability, as they have not alleged that any acts by Defendants, separately considered, constitute a tort against Plaintiffs.

**i.  Actual Knowledge**

The first of these two forms of aiding and abetting liability requires that the defendant "have actual knowledge of the specific primary wrong the defendant substantially assisted."  *In re First Alliance Mortg. Co.*, 471 F.3d 977, 993 (9th Cir. 2006) (*citing Casey*, 127 Cal. App. 4th at 1146).  In other words, the defendant must know the other is committing a wrongful act and help him do so. *Casey*, 127 Cal.App.4th at 1144.  That a defendant had "vague suspicion of wrongdoing" or knew of "wrongful or illegal conduct" does not suffice.  *In re First Alliance Mortg. Co.*, 471 F.3d at 993 n.4 (citation and quotation marks omitted); *see Casey*, 127 Cal. App. 4th at 1151-52.  A plaintiff may plead actual knowledge through inference.  *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1120-21 (C.D. Cal. 2003) ("While it is true the complaint does not directly state that the Banks knew Slatkin was running a Ponzi scheme and stealing investor funds, this is the net effect of allegations that the Banks knew of Slatkin's "fraud," "actively participated" in the Ponzi scheme

---

[11] In the briefing on the motions, Plaintiffs appeared to assert an alternative theory of aiding and abetting liability, namely that Abu-Nasser and Carrigg were required by California law to render assistance to Plaintiffs after striking Plaintiffs with the vehicle, and the individual BART Defendants "presumably knew of these duties and helped [Abu-Nasser and Carrigg] breach them by helping them flee the scene."  Opp. to Mot. Dismiss [Docket No. 43] at 7.  However, at the hearing, Plaintiffs' counsel clarified that this argument did not serve as the basis for Plaintiffs' theory of liability on the third and fourth claims.

United States District Court
For the Northern District of California

with knowledge of his "crimes," and accommodated him by using atypical banking procedures to service his accounts.").

Plaintiffs have not alleged that any Defendants had actual knowledge of the assault and battery allegedly committed by Abu-Nasser and Carrigg, and the allegations as pleaded permit the court to infer, at the most, that Defendants might have had a vague suspicion of wrongdoing. Plaintiffs have therefore failed to plead this element of the third and fourth causes of action.

### ii. Intent and Substantial Assistance

"[W]hile aiding and abetting may not require a defendant to agree to join the wrongful conduct, it necessarily requires a defendant to reach a conscious decision to participate in tortious activity for the purpose of assisting another in performing a wrongful act." *Howard v. Superior Court*, 2 Cal.App.4th 745, 749 (1992). The defendant must have "acted with the intent of facilitating the commission of that tort." *Gerard v. Ross*, 204 Cal. App. 3d 968, 983, 251 Cal. Rptr. 604 (Cal. Ct. App. 1988). Mere knowledge that a tort is being committed and the failure to prevent it does not constitute the giving of substantial assistance or encouragement to the tortfeasor. *Austin B. v. Escondido Union Sch. Dist.*, 149 Cal. App. 4th 860, 879, 57 Cal. Rptr. 3d 454, 469 (Cal. Ct. App. 2007) (school district employees were not liable as aiders and abettors of preschool instructor's alleged battery of two autistic preschool students, even if they were aware of alleged tortious conduct and did not take action to prevent it). *See also Fiol v. Doellstedt*, 50 Cal. App. 4th 1318, 1326, 58 Cal. Rptr. 2d 308, 313 (Cal. Cat. App. 1996).

The allegations do not support the inference that the individual BART Defendants intended to facilitate the commission of the alleged torts committed by Abu-Nasser and Carrigg. The individual BART Defendants arrived at the scene of the incident, helped Carrigg and Abu-Nasser drive away, and subsequently failed to conduct a criminal investigation. FAC at ¶¶ 19, 22-23. Plaintiffs cited no cases where individuals who interact with the tortfeasors *after* the commission of the tort were found to have the requisite intent to facilitate the commission of the tort, nor any cases finding that those individuals' ex post facto actions constituted substantial assistance, and the court found none its research. The two cases that Plaintiffs cite to support their argument are inapposite, as both are cases involving the *criminal* accomplice liability of passengers in cars used to commit

United States District Court

For the Northern District of California

1   hit-and-run accidents, rather than the *civil* liability of individuals outside of the vehicle for aiding

2   and abetting tortfeasors who have assaulted or battered others with a car.  *See People v. Holford*, 65

3   Cal.2d 74, 81-82 (1965) (passenger who encouraged driver to leave the scene of a hit-and-run

4   accident, knowing that someone has been injured, could have been charged as a principal or

5   accomplice in the commission of the crime); *People v. Graves*, 74 Cal. App. 415, 240 P. 1019 (Cal.

6   Ct. App. 1925).

7        At the hearing, Plaintiffs' counsel stated that she would be able to amend the pleadings to

8   address the actual knowledge element of the third and fourth claims, but only pointed the court to

9   *Holford* and *Graves* with respect to the insufficiency of the pleadings on the intent and substantial

10  assistance elements of the claims. Accordingly, the third and fourth causes of action are dismissed

11  without leave to amend as to the individual BART Defendants because amendment would be futile.

12  Because BART's liability is premised on a theory of vicarious liability, the claim fails as to BART

13  as well.

14  **F.  Claim 5: Section 1983 Claim Against Individual BART Defendants**

15       The fifth cause of action is a claim under 42 U.S.C. § 1983 against all individual Defendants

16  that alleges that the individual Defendants "participated in the deprivation of [Plaintiffs']

17  constitutional rights under the First Amendment."[12]  FAC at ¶ 47.  The individual BART

18  Defendants argue that Plaintiffs have failed to adequately plead the First Amendment violation on

19  which the Section 1983 claim is premised.

20       The First Amendment states: "Congress shall make no law respecting an establishment of

21  religion, or prohibiting the free exercise thereof; or abridging the freedom of speech, or of the press;

22  or the right of the people peaceably to assemble, and to petition the Government for a redress of

---

23       [12]  Plaintiffs' briefing also seems to suggest that Defendants' different treatment of individuals
24  who exercise their expressive rights implicates claims under the federal or state constitutional equal
    protection guarantees.  *See e.g.,* Opp. to MJP [Docket No. 28] at 3 n. 1 (citing to cases in which police
25  were found to have violated equal protection guarantees by denying services to people on the basis of
    race or sex).  However, the FAC appears only to state theories of liability against the Defendants
26  premised on the First Amendment of the United States Constitution and Article I, Section 2 of the
    California Constitution, rather than any equal protection claims.  Accordingly, the court declines to
27  construe Plaintiffs' pleadings to state equal protection claims, and declines to consider whether the
    Ninth Circuit recognizes equal protection claims premised on the same set of circumstances giving rise
28  to a First Amendment retaliation claim.

22

United States District Court

For the Northern District of California

grievances."  U.S. Const. amend. I.  It prohibits "adverse governmental action against an individual in retaliation for the exercise of protected speech activities."  *Keenan v. Tejeda,* 290 F.3d 252, 258 (5th Cir. 2002); *Mendocino Environmental Center v. Mendocino County* ("*Mendocino I*")*,* 14 F.3d 457, 464 (9th Cir. 1994) (governmental action "designed to retaliate against and chill political expression strikes at the heart of the First Amendment") (*citing Gibson v. United States,* 781 F.2d 1334, 1338 (9th Cir.1986)).  "Accordingly, the victim of such action is entitled to sue the responsible" officers.  *Mendocino I,* 14 F.3d at 464.

"A plaintiff may not recover merely on the basis of a speculative 'chill' due to generalized and legitimate law enforcement initiatives."  *Id.*  To prevail on a First Amendment retaliation claim, a plaintiff must show: "(1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'" *Worrell v. Henry,* 219 F.3d 1197, 1212 (10th Cir. 2000) (citing *Mendocino Environmental Center v. Mendocino County* ("*Mendocino II*")*,* 192 F.3d 1283, 1300-1301 (9th Cir. 1999)); *see also Buckheit v. Dennis,* 713 F. Supp. 2d 910, 921-22 (N.D. Cal. 2010)*.*

"[The plaintiff] must ultimately prove that [the defendant's] desire to cause the chilling effect was a but-for cause of [the defendant's] action." *Dietrich v. John Ascuaga's Nugget,* 548 F.3d 892, 900-01 (9th Cir. 2008) (citation omitted); *see also Vinatieri v. Mosley*, 787 F. Supp. 2d 1022, 1033 (N.D. Cal. 2011) *aff'd*, 11-16922, 2013 WL 3389360 (9th Cir. July 9, 2013).  "Because direct evidence of retaliatory intent rarely can be pleaded in a complaint, allegation of a chronology of events from which retaliation can be inferred is sufficient to survive dismissal." *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012); *Pratt v. Rowland,* 65 F.3d 802, 808 (9th Cir. 1995) ("timing can properly be considered as circumstantial evidence of retaliatory intent"); *Murphy v. Lane,* 833 F.2d 106, 108-09 (7th Cir.1987).

The FAC states more than mere conclusory allegations that BART employees retaliated against Plaintiffs for their exercise of their First Amendment rights.  At the time of the incident, Plaintiffs were participating along with hundreds of people in the "Occupy Oakland" protests.  The

United States District Court

For the Northern District of California

events of November 2, 2011 were part of a larger movement for "broad political and social change" during which people "engaged in a variety of expressive and associative activities in and around the plaza, including demonstrations and marches, the exhibition of signs and banners, and conducting meetings about the movement and political and social issues.  Some supporters of the movement erected tents in the plaza; many others came to the plaza at various times to participate in meetings, demonstrations and other expressive activity protected by the First Amendment . . . and Article I, Section 2 of the California Constitution."  FAC at ¶ 15.  There was almost no traffic near the scene of the incident, with at least one exception: the driver of the vehicle that struck Plaintiffs was observed by many people to be driving erratically.  *Id.* at ¶¶ 16-17.  After striking Plaintiffs, Carrigg "angrily launched himself into the crowd attempting to provoke a fight."  *Id.* at ¶ 18.  He behaved in an "extremely aggressive and hostile manner toward the crowd of witnesses."  *Id.*  The alleged assault and battery on Plaintiffs was "committed in the presence of dozens of witnesses—many of whom filmed the incident."  *Id.* at ¶ 19.  Yet "[d]espite the fact [that] they had the suspects and other critical evidence at the scene within their control, Defendants who appeared to be BART police cleared a path for Carrigg and Abu-Nasser to leave the scene."  FAC at ¶ 19.  In context, these allegations create a chronology that support an inference that "[b]ut for the fact that Plaintiffs were exercising their First Amendment right of assembly as part of the Occupy Oakland protests, Defendants would have done their job in a proper manner for the purpose of having Carrigg and Abu-Nasser face prosecution for their actions against Plaintiffs."  FAC at ¶ 22.

Accordingly, Plaintiffs have pleaded a violation of their First Amendment rights sufficient to support their Section 1983 cause of action against the individual BART Defendants, and the motion to dismiss this claim is denied.

## G.  Claim 6: Conspiracy

Plaintiffs allege that all the individual Defendants conspired with Carrigg and/or Abu-Nasser to deprive Plaintiffs of their First Amendment rights in violation of Section 1983.

"To establish liability for a conspiracy in a § 1983 case, a plaintiff must 'demonstrate the existence of  an agreement or "meeting of the minds" to violate constitutional rights.'"  *Crowe v. County of San Diego*, 608 F.3d 406, 440 (9th Cir. 2010) (quoting *Mendocino II*, 192 F.3d at 1301).

United States District Court

For the Northern District of California

1   "The defendants must have, by some concerted action, intended to accomplish some unlawful

2   objective for the purpose of harming another which results in damage." *Mendocino II*, 192 F.3d at

3   1301.  "Such an agreement need not be overt, and may be inferred on the basis of circumstantial

4   evidence such as the actions of the defendants.  For example, a showing that the alleged conspirators

5   have committed acts that are unlikely to have been undertaken without an agreement may allow a

6   jury to infer the existence of a conspiracy." *Id.*  "To be liable, each participant in the conspiracy

7   need not know the exact details of the plan, but each participant must at least share the common

8   objective of the conspiracy." *Id.* at 1302. "Whether defendants were involved in an unlawful

9   conspiracy is generally a factual issue and should be resolved by the jury, so long as there is a

10  possibility that the jury can infer from the circumstances that the alleged conspirators had a 'meeting

11  of the minds' and thus reached a[n] understanding to achieve the conspiracy's objectives." *Id.* at

12  1301-02 (quotations omitted).

13          The allegations pled are sufficient to state a theory of conspiracy against the individual

14  BART Defendants.  As described above, chronology of events supports a plausible inference that the

15  individual BART Defendants actions were motivated by a retaliatory desire to chill Plaintiffs' free

16  speech and assembly rights.  From this same chronology, one could infer an agreement between the

17  individual BART Defendants to punish Plaintiffs for their exercise of those rights, which is all that is

18  required for this claim to survive a motion to dismiss.  Accordingly, the motion to dismiss this cause

19  of action is denied.

20  **H.  Punitive Damages**

21          Plaintiffs seek punitive and exemplary damages against all individual Defendants, including

22  the individual BART Defendants.  FAC at 13.  A plaintiff may recover punitive damages for a

23  Section 1983 claim "when the defendant's conduct is shown to be motivated by evil motive or

24  intent, or when it involves reckless or callous indifference to the federally protected rights of

25  others." *Smith v. Wade*, 461 U.S. 30, 56 (1983).  A plaintiff may recover punitive damages for his

26  state tort claims pursuant to California Civil Code § 3294, which authorizes an award for exemplary

27  damages against a tortfeasor who has been guilty of "oppression, fraud or malice, express or

28  implied." *G. D. Searle & Co. v. Superior Court*, 49 Cal. App. 3d 22, 26, 122 Cal. Rptr. 218 (Cal. Ct.

App. 1975) (citing Cal. Civ. Code § 3294).  Malice "sufficient to support an award of punitive damages . . . may be established by a showing that the defendant's wrongful conduct was willful, intentional, and done in reckless disregard of its possible results." *Id.* at 28.  "When the plaintiff alleges an intentional wrong, a prayer for exemplary damage may be supported by pleading that the wrong was committed willfully or with a design to injure." *Id.* at 29.

Contrary to Defendants' argument, Plaintiffs' factual allegations supporting their request for punitive damages are not merely conclusory.  Plaintiffs have alleged that the individual BART Defendants declined to investigate and arrest assailants after the commission of the assault in retaliation for the Plaintiffs' exercise of their expressive rights.  These are specific allegations which, if taken as true, could demonstrate that the individual BART Defendants acted with the requisite intent.  Accordingly, Plaintiffs have sufficiently pleaded their prayer for punitive damages.

## IV.  CONCLUSION

For the reasons stated above, the motions on the pleadings is **granted** and the motion to dismiss is **granted in part and denied in part.**  Plaintiffs are granted leave to amend their complaint, but only to bring it in accordance with this order.

IT IS SO ORDERED.

Dated:  October 17, 2013

_____
DONNA M. RYU
United States Magistrate Judge